IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARLYLE FORTRAN TRUST,<br><br>    Plaintiff,<br><br>    v.<br><br>NVIDIA CORPORATION, et al.,<br><br>    Defendants. | NO. C 05-00427 JW<br><br>**ORDER DISMISSING THIRD AMENDED COMPLAINT WITH LEAVE TO AMEND;<br>SETTING FURTHER CASE MANAGEMENT CONFERENCE** |

## I. INTRODUCTION

The former directors and officers of 3dfx Interactive, Inc. (3dfx Defendants), the nVidia individual defendants, and nVidia Corporation, nVidia U.S. Investment (nVidia Defendants), (collectively "Defendants") seek dismissal of the newly asserted claims set forth in the Third Amended Complaint ("TAC") filed by Carlyle Fortran Trust ("Carlyle"). On October 18, 2005, this Court held a hearing on Defendants' motions. For the reasons set forth below, this Court dismisses the claims in the TAC for lack of standing and grants Carlyle leave to amend in accordance with this Order.

## II. BACKGROUND

Based upon the papers filed by the parties, the following facts are uncontested: 3dfx was a public company in the business of developing and selling graphic chips, graphics boards, and related technology. Pursuant to a lease dated August 7, 1996, Carlyle leased approximately 77,000 square feet of commercial space in San Jose, California to 3dfx. nVidia was a competitor of 3dfx also in the business of developing

and selling graphics technology. In late 2000, nVidia and 3dfx structured and entered into an Asset Purchase Agreement ("APA") where nVidia paid $70 million in cash plus 1,000,000 shares of nVidia common stock for certain assets of 3dfx including its portfolio of patents, trademarks, and applications. The APA also provided that 3dfx would dissolve after consummating its transaction with nVidia. The parties dispute the exact effects and motivations behind the structuring of the APA's terms.

On January 1, 2002, 3dfx ceased paying rent. Carlyle filed a complaint in the Santa Clara County Superior Court against 3dfx, nVidia and their respective directors and officers for, inter alia, intentional interference with contract, fraudulent transfer, and unfair business practices. 3dfx then filed for relief in bankruptcy under Chapter 11. On January 3, 2003, the nVidia Defendants removed Carlyle's State Court action to the Bankruptcy Court. The bankruptcy court appointed a trustee ("Trustee"), who filed a complaint against nVidia and a subsidiary. The Trustee subsequently filed an action against the 3dfx Defendants in the San Mateo County Superior Court. On September 21, 2004, the Trustee and the 3dfx Defendants entered into a Settlement Agreement and Mutual Release ("Settlement Agreement") pursuant to which the 3dfx Defendants were to pay $5.5 million. The Settlement Agreement was approved by the bankruptcy court on November 19, 2004.

By Order on May 6, 2005, this Court withdrew the reference of Carlyle's action from the Bankruptcy Court. In July of 2005, the nVidia and 3dfx Defendants filed the present motion to dismiss claims in Carlyle's TAC.

### III. STANDARDS

Under Rule 12(b)(6), a plaintiff's claims or entire complaint may be dismissed by the court for "failure to state a claim upon which relief can be granted." Rule 12(b)(6). See, e.g., Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, 407 F.3d 1027, 1032 (9th Cir. 2005) (affirming district court's partial Rule 12(b)(6) dismissal). A Rule 12(b)(6) motion tests the legal sufficiency of the claims stated in the complaint. The court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. Unless the answer is unequivocally in the negative, the motion must be denied. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); De La Cruz v. Tormey (9th Cir. 1978). In resolving a Rule 12(b)(6)

2

motion, the court must (1) construe the complaint in the light most favorable to the plaintiff, (2) accept all well-pleaded factual allegations as true, and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Because of the liberal federal pleading rules, a 12(b)(6) dismissal is proper only in "extraordinary" cases. U.S. v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

## IV.  DISCUSSION

As an initial matter, Carlyle must have standing to pursue the claims it asserts in the TAC. Defendants contend that Carlyle has no standing to bring certain claims in the TAC, because such claims belong exclusively to the Trustee.[1] Carlyle argues that the Trustee has no standing to pursue the claims in the TAC because these claims do not belong to the debtor. Contrary to Carlyle's position, the law of the Ninth Circuit requires that this Court dismiss the general claims in the TAC for lack of standing.

Under California law as interpreted by the Ninth Circuit, the authority to pursue a debtor's general causes of action is delegated exclusively to the bankruptcy trustee, unless the creditor can show particularized injury. In re Folks, 211 B.R. 378 (9th Cir. BAP 1997). In In re Folks, the Ninth Circuit held that the bankruptcy trustee has exclusive jurisdiction for general claims: "If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." Id. at 386. In so doing, the Ninth Circuit defined personal claims as those held by the creditor, and distinguished these personal claims from general claims over which the bankruptcy trustee has exclusive standing:

> A cause of action is personal if the claimant himself is harmed and no other claimant or creditor has an interest in the case. A general claim exists if the liability is to all creditors of the corporation without regard to the personal dealings between such officers and creditors.

---

[1] In the motions presently before the Court, Defendants do not apply their standing argument to every claim in the TAC. However in the interests of judicial efficiency, and in accordance with a district court's "power and...duty to raise the adequacy of [plaintiff]'s standing sua sponte," Bernhardt v. County of Los Angeles, 279 F.3d 862, 868 (9th Cir. 2002), this Court will determine Plaintiffs' standing as to each claim in the TAC.

3

Id. at 386 (citations and quotations to Koch v. Farmers Union Cent. Exchange, Inc., 831 F.2d 1339 (7th Cir. 1987) omitted). More recently, the Ninth Circuit has expanded the holding of In re Folks to grant standing to a bankruptcy trustee where the trustee alleged that defendants' "dissipation of assets limited the firm's ability to pay creditors." In re Smith, 421 F.3d 989, 1004 (9th Cir. 2005). Recognizing that "the economic reality that any injury to an insolvent firm is necessarily felt by its creditors," the Ninth Circuit in In re Smith nevertheless held that the defendants' acts in dissipating corporate assets gave rise to a general claim. Id. [2]

### A. Claims in the TAC Based on Dissipation of Assets Caused by the APA

A number of the claims in the TAC are based on the general allegation that the structure of the APA dissipated the amount of assets available to pay all creditors. For example, claims 1 and 2 allege that the dissolution of 3dfx, and 3dfx's subsequent inability to pay rent interfered with the contractual and economic relations between 3dfx and Carlyle. As alleged, however, these claims are not particular to Carlyle. The dissolution of a corporation where liabilities exceed assets rendering the corporation unable to fulfill its obligations, is at the heart of bankruptcy. The exact injury to each creditor as a result of the dissolution of an insolvent corporation may vary, but this variation does not make the injury "particularized" within the meaning of the term as used by the Ninth Circuit. Since the injury caused by the dissolution of 3dfx with insufficient assets to pay its obligations is "to all creditors of the corporation without regard to the personal dealings between such officers and creditors," In re Folks, 211 B.R. at 386, the Trustee has exclusive jurisdiction to assert the claims arising out of the allegedly APA-caused dissolution of 3dfx.

In its papers, Carlyle points to its allegations in ¶¶ 86-88 as particularized claims. In these paragraphs, Carlyle alleges that at the time of the APA, Defendants agreed that nVidia or its subsidiary

---

[2] At the hearing on October 18, 2005, and in Plaintiff's Motion for Leave to File (Docket No. 129), Carlyle argued that In re Smith supports its position because the Ninth Circuit did not expressly grant the bankruptcy trustee *exclusive* standing. First, even if Carlyle is correct that In re Smith only held that the trustee has standing along with the creditors, the holding in In re Folks granting the bankruptcy trustee exclusive standing for general creditor claims has not been superceded by other Ninth Circuit or Supreme Court decisions. Second, on this Court's reading of In re Smith, the trustee action was the only case before the Ninth Circuit, and thus it had no jurisdiction to deny standing to a separate action involving plaintiffs before a Colorado court.

would be assuming the Lease, but shortly before Defendants closed the asset purchase transaction at issue, nVidia and its subsidiary refused to assume the Lease. However, the core of these allegations is a general creditor claim of simply increased general liability based on Defendants' refusal to assume the lease. Carlyle states that nVidia "refused to assume the Lease, thereby leaving 3dfx with an additional liability in excess of $7 million without any additional Cash Consideration or Stock Consideration to deal with such liability." (TAC ¶ 87.) The dissipation of corporate assets resulting from an additional $7 million in liabilities is a harm to the bankruptcy estate common to all creditors. See In re Smith, 421 F.3d at 1004. Accordingly, the Trustee has exclusive jurisdiction over the claims in ¶ 86-88 that are based on additional liabilities of the estate.

> B.   Claims Based on Insufficient Consideration Provided by the APA for 3dfx's Assets.

To the extent that the claims in the TAC are based on an allegation that the APA provided insufficient consideration for 3dfx's assets, the claims are general and are also to be exclusively asserted by the Trustee. For example, claims 3-5 for fraudulent transfer are primarily based on Carlyle's allegations that the APA provided "inadequate value" for 3dfx's assets. Such claims based on the amount of consideration provided under the APA for the assets of 3dfx are general claims which could be brought by any creditor of the debtor. Under the rule of the Ninth Circuit in In re Folks, the Trustee has exclusive jurisdiction over claims based on insufficient consideration as a result of the APA.

Similarly, Claim 6 of the TAC alleges successor liability based on the nVidia Defendants' actions in having "acquired substantially all of the assets of 3dfx and paid inadequate consideration therefor" through the APA, and that the nVidia Defendants acted "for the fraudulent purposes of allowing 3dfx to evade its liability to Carlyle." (TAC, ¶ 138.) While a claim that an asset purchase agreement designed to escape liability from a particular creditor would ordinarily be an allegation of particularized injury, there does not seem to be anything in the TAC that alleges that Defendants acted with Carlyle in mind. At the hearing, Carlyle argued that their injury was particularized because Defendants' due diligence prior to the APA made Defendants aware of the terms of the Lease. However, Defendants were likely aware of all creditors' contracts with 3dfx, and Carlyle does not allege that Defendants were particularly aware of the

Lease, or structured the APA to evade the Lease in particular. Based on the facts alleged in the TAC, any creditor could allege that the APA was "for the fraudulent purposes of allowing 3dfx to evade its liability" to any or all of the creditors. Accordingly, because Carlyle has alleged insufficient facts to support a claim that Defendants entered into the APA to evade liability to Carlyle in particular, claim 6 is also a general claim that the Trustee has exclusive standing to assert.

      C.      <u>Claims Based on Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty in Entering into the APA</u>

As to Carlyle's claims regarding breach of fiduciary duty, Carlyle argues that it has standing because California law recognizes a fiduciary duty of the directors and officers of an insolvent corporation to its creditors. Under California law, a claim could be stated that the 3dfx Defendants breached their fiduciary duties to the creditors of 3dfx when 3dfx was in the zone of insolvency. However, Carlyle is not the proper party to assert this claim. The Ninth Circuit in <u>In re Smith</u> declined to rule on whether the creditors could have asserted these claims outside the bankruptcy context "because state law often permits creditors to pursue derivative claims on an insolvent corporation's behalf when the corporation itself has been injured by breaches of fiduciary duty." 421 F.3d at 1006. The Ninth Circuit in <u>In re Folks</u>, however, already found that under California state law, derivative claims on an insolvent corporation's behalf are asserted exclusively by the bankruptcy trustee. 211 B.R. at 384-85. Furthermore, in the case cited by Carlyle, <u>Saracco Tank & Welding Co. v. Platz</u>, 65 Cal. App. 2d 305, 315 (1944), the court stated that "all of the assets of a corporation immediately on its becoming insolvent, become a trust fund for the benefit of <u>all</u> of its creditors." (emphasis added). Because the claim that Defendants breached their fiduciary duty by entering into an APA which did not provide enough in cash for the bankruptcy estate is general to all creditors, the rule of <u>In re Folks</u> that the trustee has exclusive jurisdiction to assert claims where "liability is to all creditors of the corporation" bars Carlyle from asserting a claim for breach of fiduciary duty against the 3dfx Defendants. Similarly, Carlyle's claim against nVidia Defendants that the nVidia Defendants aided and abetted the 3dfx Defendants' breach of fiduciary duty is also dismissed to the extent that such a claim is general to all creditors.

D.   Claims Based on the Structure of the APA

At oral argument, Carlyle argued that the Trustee does not have an interest in the claims in the TAC because the claims are based on the structure of the APA as unfair to creditors, and not an allegation that the APA provided insufficient consideration for 3dfx's assets.[3]  In other words, Carlyle reasons that each of the general claims asserted are general *creditor* claims belonging to creditors and not to the Trustee.  The injury to Carlyle allegedly arose as a result of Defendants agreeing to a deal under the APA which only provided $70 million in cash plus nVidia stock as opposed to the initial offer of $100 million in cash with no stock.  By the terms of their allegations, these claims are general.  Because the Ninth Circuit has not expressly excluded general creditor claims from the broad grant of exclusive trustee jurisdiction over general claims in In re Folks, this Court is reluctant to carve out such an exception.

Carlyle claims to find support for its standing argument in In re Smith, where the Ninth Circuit cited to Steinberg v. Buczynski, 40 F.3d 890 (7th Cir. 1994) for the proposition that "when a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring a suit against the third party."  In re Smith, 421 F.3d at 1002-03.  Carlyle's reliance on the Ninth Circuit's citation of Steinberg is misplaced.  In Steinberg, a plumber's union pension fund obtained a judgment against a plumbing corporation for ERISA-required contributions.  The corporation then declared bankruptcy.  The bankruptcy trustee brought an adversary proceeding against the corporation's two shareholders seeking to pierce the corporate veil and hold the shareholders personally liable for the corporation's debt to the pension fund.  In holding that the bankruptcy trustee did not have standing to assert this claim, the Seventh Circuit relied on the fact that the trustee had failed to allege any wrongs by the shareholders.  Id. at 891.  In this case, Carlyle is not simply attempting to collect on rent due prior to the

---

[3] This Court notes that basing the claims on an argument that the APA was structured to minimize the assets available to repay creditors while allowing the shareholders to receive valuable stock consideration may have been secondary to the insufficient consideration allegations in the TAC.  For example, the central allegation in the TAC is that the APA "stripp[ed] 3dfx of substantially all of its assets for inadequate consideration," resulting in injury to Carlyle (Claims 1 and 2, TAC ¶¶ 88, 96, 100), or that "3dfx transferred such assets to [nVidia Defendants] without receiving reasonably equivalent value in consideration therefor," (Claims 3-5, TAC ¶¶ 107, 118, 129), or that the nVidia Defendants "acquired substantially all of the assets of 3dfx and paid inadequate consideration therefor," (Claim 6, TAC ¶ 138), or "under the nVidia Agreement, inadequate consideration was given for 3dfx's assets" (Claim 9, ¶ 152).

3dfx bankruptcy. The claims asserted in the TAC, instead, stem from the actions of Defendants entering into the APA and that the APA (or structure thereof) left the estate with insufficient funds to make rental payments. The Steinberg opinion itself finds that it would have granted the bankruptcy trustee standing had the trustee sufficiently alleged that the shareholders diverted assets to their personal use thus minimizing the amount available to pay the pension fund. Id. at 892.

This Court recognizes the potential for a conflict of interest between the shareholders and the creditors when Defendants entered into the APA. However, a bankruptcy trustee, appointed after the corporation's liabilities exceed its assets, is the representative of the *bankrupt estate*. Among the trustee's duties is the obligation to "collect and reduce to money the property of the estate." 11 U.S.C. §704(1). The "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. §541(a)(1), including the debtor's "causes of action." In re Smith, 421 F.3d at 1002. At the time of commencement of the Chapter 11 proceedings, Defendants had already entered into the APA. Thus, the "interests of the debtor in property as of the commencement of the case" includes the interest to have the bankrupt estate consist of $100 million in cash instead of $70 million in cash. Accordingly, the diminution in assets of the bankrupt estate as a result of the structure of the APA is the debtor's cause of action properly asserted exclusively by the Trustee.

## V.  CONCLUSION

For the reasons set forth above, this Court dismisses the TAC. Carlyle is ordered to file a Fourth Amended Complaint limiting its claims and allegations in accordance with this Order by February 4, 2006. Failure to file a Fourth Amended Complaint by this deadline may result in dismissal. The parties are ordered to appear before the Court on April 18, 2006 at 10:00 a.m. for a case management conference.

Dated: November 10, 2005
05cv427dismTAC

   /s/ James Ware
JAMES WARE
United States District Judge

8

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Douglas A. Applegate daa@sezalaw.com
Dwight Craig Donovan Dwight@mbvlaw.com
Henry H. Oh henry.oh@dlapiper.com
James N. Kramer jkramer@orrick.com
Jonathan B. Gaskin jgaskin@orrick.com
Justin Myer Lichterman jlichterman@orrick.com
Karen Johnson-McKewan kjohnson-mckewan@orrick.com
Kim Y. Arnone karnone@buchalter.com
Leah Anne Nutting lnutting@orrick.com
Michael Todd Scott tscott@orrick.com
Morgan William Tovey mtovey@reedsmith.com
Richard C. Darwin rdarwin@buchalter.com
Robert P. Varian rvarian@orrick.com
Ruth Young Kwon rkwon@orrick.com

USBC Manager-San Jose
US Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

Arthur S. Weissbrodt
U.S. Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

Stephen Pettigrew
David M. Shannon
Nvidia Corporation
2701 San Tomas Expressway
Santa Clara, CA 95050

Henry H. Ho
Dewey Ballantine LLP
333 South Grand Avenue
Los Angeles, Ca 90071-1530

**Dated: November 10, 2005**                               **Richard W. Wieking, Clerk**

                                                                          **By:___/s/ JW Chambers_____**
                                                                          **Ronald L. Davis**
                                                                          **Courtroom Deputy**

United States District Court
For the Northern District of California